IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 16–cv–01059–KMT

FLORENCE S. GARCIA MAESTAS,

      Plaintiff,

v.

CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

---

## ORDER

---

This matter comes before the court on review of the Commissioner's denial of Plaintiff

Florence S. Garcia Maestas's application for (1) Disabled Widows Benefits ("DWB"), (2)

Disability Insurance Benefits ("SSDI") and (3) Supplemental Security Income ("SSI") pursuant

to Title XVI of the Social Security Act.[1]  Jurisdiction is proper under 42 U.S.C. § 405(g).

Plaintiff filed her opening brief on August 22, 2016 (Doc. No. 13 ["Opening Br."]), Defendant

filed her response on September 12 (Doc. No. 14 ["Resp."]), and Plaintiff filed her reply on

September 26, 2016 (Doc. No. 17 ["Reply"]).

Plaintiff's SSDI benefits are not presented for judicial review. See Opening Br. at 2. In

addition, because Plaintiff has largely made arguments that are common to both the ALJ's

January 20, 2015 decision (AR 12-31) and January 16, 2015 decision (AR 32-55)—and since

---

[1] *See generally* Doc. No. 10, Social Security Administrative Record ["AR"].)

Defendant's response has followed a similar approach (Resp. at 2)—the Court's analysis will largely track these arguments and provide dual citations where appropriate.

## FACTUAL AND PROCEDURAL BACKGROUND

In both decisions, the Commissioner found Plaintiff not disabled under the Social Security Administration's regulations ("SSA"). (AR 15-31, 35-51). In determining disability, the ALJ used the sequential evaluation process.[2] At step one, the ALJ found "claimant's earnings record documents no income since the amended alleged disability onset date, and she denies working since prior to that date (citing ex. 10D, 11D, 3E)." (AR 18, 38.) At step two, where the "severity" of claimant's impairments is assessed, the ALJ found Plaintiff had the following severe impairments: obesity; varicose veins and/or thrombosis of the bilateral lower extremities; depressive disorder; and anxiety disorder (20 CFR 404.1520( c), 416.920(c)). (AR 19, 39.) None of Plaintiff's severe impairments were found presumptively disabling at step three. (AR 19-20, 39-40.)

Prior to reaching step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found her capable of working as follows: "Physically, she is able to lift 20 pounds occasionally and 10 pounds frequently. During an eight-hour workday, she is able to stand and/or walk for two hours and sit for at least six hours. Mentally, the claimant is able to: use judgment in making work decisions; respond appropriately to supervision, coworkers and work situations;

---

[2] Step one determines work activity, step two determines severity of claimed impairments, step three determines a presumptive disability, step four determines whether the claimant can still perform her "past relevant work," and step five determines if the claimant can do work other than her past relevant work. *See Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988) (detailing five steps). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.*

and deal with changes in a routine work setting. She should not perform any assembly-line work (because of limitations in persistence, pace, and stress). She cannot engage in work requiring intense, sustained concentration." (AR 20, 40). In making this assessment the ALJ found Plaintiff not credible in relating the severity of her impairments. He also found that since Plaintiff was not credible, her medical evidence was not credible either. (AR 28, 48.)

Plaintiff sought timely review before this Court.

## STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

Review of the Commissioner's disability decision is limited to determining whether the ALJ (1) applied the correct legal standard and (2) whether the decision is supported by substantial evidence. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence

is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912

F.2d at 1196. It requires more than a scintilla but less than a preponderance. *Hedstrom v.*

*Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is

overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v.*

*Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal

apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.

1993). The court "meticulously examine[s] the record as a whole, including anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test has

been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). However,

the court may not reweigh the evidence or substitute its discretion for that of the Commissioner.

*Thompson*, 987 F.2d at 1487.

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d

476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly

develop the record as to material issues." *Id.* This duty exists even when the claimant is

represented by counsel. *Id.* at 480. Moreover, the court may not affirm an ALJ's decision based

on a *post-hoc* rationale supplied in an appellate brief, since doing so would "usurp essential

functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357

F.3d 1140, 1142 (10th Cir. 2004). Although the Tenth Circuit has applied the doctrine of

harmless error in administrative appeals, it is only appropriate where "no reasonable

administrative factfinder, following the correct analysis, could have resolved the factual matter in

any other way." *Id.* at 1145.

# ANALYSIS

Plaintiff raises several issues for consideration: (1) the ALJ's RFC finding does not account for all of the relevant mental limitations contained in the medical opinions; (2) the ALJ erred in assessing Plaintiff's credibility, (3) the ALJ's hypothetical questions to the vocational expert did not precisely reflect Plaintiff's limitations; (3) the ALJ's analysis engaged in cherry-picking evidence that was consistent with the final outcome, while ignoring evidence that was supportive of Plaintiff's claim; and (4) that ALJ erred in application of treating physician principles.

While each of Plaintiff's arguments holds merit, the Court finds arguments addressing the fourth issue most persuasive.

## A.  The ALJ Erred in Application of Treating Physician Principles

Plaintiff challenges the ALJ's treating physician analysis—specifically, the weight afforded to each of her treating physicians' opinions (e.g., Mary Rogers Psy.D.).[3] Plaintiff contends that the ALJ not only misstated the rule relevant to the proper analysis, but failed to

---

[3] Among other acceptable medical source means a medical source who is, for e.g., (1) Licensed physician (medical or osteopathic doctor); or (2) Licensed psychologist, which includes: licensed or certified psychologist at the independent practice level. *See* 20 C.F.R. § 404.1502. Such sources may be considered treating physicians provided they meet 20 C.F.R. §§ 416.927.  There was no dispute by the parties as to whether Dr. Rogers met the treating physician threshold; the issue was what weight should be afforded to her opinion.

Interestingly, in a revisionary statement, and for claims after March 27, 2017, the SSA also makes clear that several new kinds of medical sources have been added to the list in 20 C.F.R. § 404.1502—stating: "We added three new kinds of medical sources to the AMS list for claims filed on or after March 27, 2017. These medical sources include Advanced Practice Registered Nurses (APRN), audiologists, and physician assistants (PA) for impairments within their licensed scope of practice." *Revisions To Rules Regarding The Evaluation Of Medical Evidence* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html (last visited February, 23, 2018).

assign proper weight to her treating physicians' opinions under the multi-factor assessment in 20

C.F.R. 416.927.  Plaintiff further contends that the ALJ formulated a new rule *vis-à-vis*

application of treating physician principles.   The Court finds Plaintiff's arguments persuasive,

warranting remand—especially in circumstances where a treating physician opinion is the most

important in the record to a plaintiff's claim for benefits.

It is to the treating physician analysis the Court now turns.

### 1.  20 C.F.R. §416.927: Controlling Weight and Multi-Factor Test

An ALJ has a duty to evaluate all medical opinions in the record, assign weight to each

opinion and discuss the weight given to the opinion. *See* 20 C.F.R. §§ 416.927(c),

416.927(e)(2)(ii); *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

A treating physician's opinion is generally entitled to controlling weight if it "is well

supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent

with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th

Cir. 2007). Where the ALJ decides "the treating physician's opinion is not entitled to controlling

weight, the ALJ must then consider whether the opinion should be rejected altogether or

assigned some lesser weight." *Id*.  If the ALJ declines to afford controlling weight to a treating

physician, the ALJ "must" consider the following specific factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the
> nature and extent of the treatment relationship, including the treatment provided and the
> kind of examination or testing performed; (3) the degree to which the physician's opinion
> is supported by relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon which an opinion
> is rendered; and (6) other factors brought to the ALJ's attention which tend to support or
> contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995)("the ALJ

must consider the following specific factors in [20 C.F.R. §§ 416.927(c)] to determine what

weight to give any medical opinion"); *Lawton v. Barnhart*, 121 F. App'x 364, 372 (10th Cir.

2005) (same); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal

quotation marks omitted).[4]

    "Under the regulations, the agency rulings, and our case law, an ALJ must give good

reasons for the weight assigned to a treating physician's opinion." *Langley v. Barnhart*, 373 F.3d

1116, 1119 (10th Cir.2004) (ellipsis omitted) (internal quotation marks omitted); *see* 20 C.F.R.

416.927(c)(2). The reasons must be "sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason

for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks omitted). "If the ALJ

rejects the opinion completely, [s]he must then give specific, legitimate reasons for doing so." *Id.*

(brackets omitted) (internal quotation marks omitted). And if an ALJ fails to explain how she

assessed the weight of the treating physician's opinion, a court cannot presume she actually

applied the correct legal standards when considering the opinion. *Robinson v. Barnhart*, 366 F.3d

1078, 1083 (10th Cir. 2004).

    **2. Plaintiff's Treating Physician Arguments**

    In challenging the ALJ's application of 20 C.F.R. 416.927(c), Plaintiff *first* contends that

the ALJ misstated the rule relevant to the assessment of controlling weight. That regulation

---

[4] Note: Although the ALJ must consider the factors in 20 C.F.R. 416.927(c), the ALJ need not
address every factor when the factor does not "apply" in the "case." *Oldham v. Astrue*, 509 F.3d
1254, 1258 (10th Cir. 2007). Where the factor does apply, however, failure to address same
constitutes legal error and warrants reversal and remand. *Goatcher*, 52 F.3d at 290; *see also
Keyes–Zachary*, 695 F.3d at 1161.

provides: "If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and* is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 416.927(c)(2) (emphasis added). This same verbiage is echoed in *Pisciotta*, 500 F.3d at 1077, among other Tenth Circuit authorities.

Yet, in applying 20 C.F.R. 416.927(c)(2), the ALJ only addressed the first half of the test—*i.e.*, that the treating physician opinions "must be 'consistent' with the 'other substantial evidence' in the record." (*See e.g.,* AR 44.) This constitutes legal error because the test is conjunctive in that the ALJ must also address "clinical and laboratory diagnostic techniques" supporting (or not supporting) the treating physician's opinion. Put simply, the ALJ has failed to articulate the proper standard, leading to error in application of same. *See Hamilton*, 961 F.2d at 1497-98.

*Second*, Plaintiff contends the ALJ misapplied the relevant factors in assigning weight to Plaintiff's treating physicians: Drs. Rogers and Zoglo. These arguments are raised in the opening brief (and reply). The Court finds these arguments persuasive. For example, Dr. Rogers specializes in clinical psychology—a specialty highly relevant to Plaintiff's mental limitations. Despite holding this specialization, the ALJ gives this factor little analysis. Indeed, despite being material to Plaintiff's case, there is seemingly no acknowledgement of this factor, nor how it lends support to Dr. Rogers's opinion. This error, among others, must be corrected on remand. *See Goatcher,* 52 F.3d at 290 ("the ALJ must consider the specific factors to determine what weight to give any medical opinion"); *see also Baca v. Dep't of Health & Human Servs.*, 5 F.3d

476, 480 (10th Cir. 1993) (the ALJ also has a basic duty of inquiry to "fully and fairly develop

the record as to material issues").[5]

*Third*, Plaintiff criticizes the ALJ's analysis regarding the weight afforded to SSA

medical examiners over treating physicians—specifically, the ALJ stated:

> I give more weight to the opinions of medical sources who are experts in the
> evaluation of Social Security Administration (SSA) disability claims. Stated
> another way, the amount of weight I give to medical source opinions depends on
> the depth of understanding that that medical source has of SSA disability
> programs and SSA regulatory and evidentiary requirements . . . Because of this
> lack of knowledge of and experience in applying SSA disability regulatory an
> evidentiary requirements, I give less weight to the treating source opinions.

(AR at 26-27, 45-46.)

In short, the ALJ  proffered a rule whereby SSA medical examiners are afforded greater

weight than treating physicians because of their institutionalized knowledge—*i.e.*, "knowledge

of and experience in applying SSA disability regulatory an evidentiary requirements." *Id.*

While not directly quoting factor (6) under 20 C.F.R. § 416.927(c)(6), the ALJ seems

reliant upon it. That 'catch-all' factor proscribes: "When we consider how much weight to give

to a medical opinion, we will also consider any factors you or others bring to our attention, or of

which we are aware, which tend to support or contradict the medical opinion. For example, the

amount of understanding of our disability programs and their evidentiary requirements that a

---

[5] The Court also expresses concern that the ALJ failed to provide sufficient depth of analysis as to the following factors: (1) the length of the treatment relationship and the frequency of examination; and (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed. 20 C.F.R. § 416.927 (c)(2)(i)-(ii). More detailed consideration of these factors would likely support Dr. Rogers's medical opinion as to Plaintiff's mental limitations and potentially require amendment to the RFC. That, however, is for the ALJ to determine in accordance with this opinion

medical source has . . . are relevant factors that we will consider in deciding the weight to give to

a medical opinion."

The Court is critical of factor (6) and its application in this case. Following substantive

research of same, there is a considerable reluctance to afford factor (6) judicial sanction at this

time.  The parties point to no Tenth Circuit case that supports its rationale, nor are there

authorities from any other circuit cited to fortify its application in cases such as the present.

Indeed, Defendant (the Commissioner itself) has made no effort to defend ALJ's heavy reliance

on factor (6)—and there is certainly no reference to the factor in Defendant's briefing. Plaintiff,

too, has squarely criticized the ALJ's approach—noting that Defendant provided no rebuttal. *See*

Reply at 7 ("Defendant did not address this argument so the Court should find it conceded.")

The Court finds this telling. By affording the SSA medical examiner heightened weight,

factor 6 creates a skewed analysis where the treating physician's opinion will automatically hold

less weight than those medical examiners of the SSA because the latter are well attuned to

"evaluating Social Security Disability claims." (AR 27.)  There is a good chance that this factor

could swallow the other factors in 20 C.F.R. § 416.927(c) despite the traditional view that

treating physicians be afforded due deference within the SSA scheme. *Cf. Robinson v. Barnhart*,

366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally

entitled to less weight than that of a treating physician, and the opinion of an agency physician

who has never seen the claimant is entitled to the least weight of all.").

Because the Court has already provided two separate bases for remand, as stated above

(pages 7-9), another reason for remand is unnecessary *per se*.  But the Court suggests that this

third issue *vis-à-vis* factor (6) be reconsidered in depth by the ALJ.  It is a rule that does not

resonate in the Tenth Circuit, nor in the SSA scheme itself.[6] This Court will not sanction such a rule at this time.

## B. Remaining Issues

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings. Because the Court finds that the ALJ's treating physician analysis is deficient in several respects, it need not address the other arguments raised by Plaintiff—particularly in circumstances where the ALJ's error could lead to subsequent weight being afforded to Plaintiff's treating physicians and amendment to the RFC analysis. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew.

---

[6] There is another concern: if SSA medical examiners are aware of the regulations and what triggers benefits (and what does not), there is a heightened chance of bias. And while there is no evidence of that in this case *per se*, the sanctioning of a new factor/rule that could lead to bias is a step that this Court is reluctant to undertake.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner for rehearing in accordance with this Order. It is further

**ORDERED** that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 23rd day of February, 2018.[7]

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

---

[7] Here, reversal for payment of benefits is not warranted because the Plaintiff has not overwhelmingly established disability. *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) ("Outright reversal and remand for immediate award of benefits is appropriate [only] when additional fact finding would serve no useful purpose." (quotation and citation omitted)); *cf. Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("Where the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.").